```
                                                              USDC SDNY
                                                              DOCUMENT
                                                              ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                                  DOC #:_____
SOUTHERN DISTRICT OF NEW YORK                                 DATE FILED: 11/03/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
SHENZHEN LONG KING LOGISTICS CO.,             :
LTD.,                                         :
                                              :
                            Plaintiff,        :
            -against-                         :      22-CV-10682 (VEC)
                                              :
HOP WO INT'L TRADING, INC., and               :      OPINION AND ORDER
YAOHUA LI,                                    :
                                              :
                            Defendants.       :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

On December 19, 2022, Plaintiff Shenzhen Long King Logistics Co., LTD. ("Long King") sued Defendants Hop Wo Int'l Trading Inc. ("Hop Wo") and Yaohua Li for breach of contract. Compl., Dkt.1. Defendants moved to disqualify the Law Offices of Kevin Kerveng Tung P.C. ("Tung Firm") as counsel for Plaintiff. Defs. Mot., Dkt. 50. For the following reasons, Defendants' motion to disqualify is DENIED.

## BACKGROUND

Between January 2022 and March 2022, Hop Wo contracted Long King to transport nine shipping containers from China to New York. Compl. ¶ 8. Hop Wo, as the consignee of all shipments, allegedly agreed to pay the freight charges at the destination in New York but failed to do so. *Id.* ¶ 9. To avoid paying demurrage, Long King released the nine containers and paid freight charges in the amount of $112,381.00. *Id.* Long King retained the Tung Firm on September 30, 2022, and filed the instant breach of contract lawsuit against Hop Wo and Li on December 19, 2022. Defs. Mem., Dkt. 51 at 3. After receiving the summons and Complaint, Li,

1

a principal of Hop Wo, called the Tung Firm; Mr. Tung told Li to call again after the Lunar New Year to engage in settlement discussions.[1]  *Id.* at 2, 7.

In December 2020 and May 2022, the Tung Firm represented Hop Wo in connection with the review of two commercial leases; Hop Wo paid the firm $800 per lease review.  *Id*. at 5.

## DISCUSSION

### I.  Legal Standard

The Court's power to disqualify counsel based on a conflict of interest stems from its supervisory authority to preserve the integrity of the adversary process, which is balanced against "a client's right freely to choose his counsel." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted).  While courts look to state ethics rules for guidance in determining whether disqualification is warranted, violations of a state ethics rules alone "may not warrant disqualification." *GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010).  "The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (citation omitted).

The applicable standard for disqualification depends "on whether the representation is concurrent or successive." *Hempstead*, 409 F.3d at 133.  It is "*prima facie* improper" for an attorney simultaneously to represent a client and another party with interests directly adverse to that client. *GSI Com. Sols., Inc.,* 618 F.3d at 209 (citation omitted).  In cases of successive representation, however, the party seeking disqualification bears a "heavy burden" because

---

[1] Mr. Tung claims that he told Mr. Li to contact Plaintiff, while Defendants assert that Mr. Tung instructed Mr. Li to contact him to engage in settlement discussions.  Pl. Mem., Dkt. 54 at 3; Defs. Mem., Dkt. 51 at 2.  Because the Court finds that the contents of the telephone call are not material to resolution of this motion, the Court does not resolve this dispute.

disqualification motions "are often made for tactical reasons" and are, accordingly, "viewed with disfavor." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 419 (S.D.N.Y. 2015) (cleaned up).

### II. The Tung Firm's Representation of Long King Is Successive to Its Representation of Hop Wo

For purposes of a motion to disqualify, the Court examines the attorney-client relationship "at the time that the conflict arises." *Anderson v. Nassau Cnty. Dep't of Corr.*, 376 F. Supp. 2d 294, 298–99 (E.D.N.Y. 2005) (citation omitted). Defendants argue that there is simultaneous representation because the Tung Firm has a continuing attorney-client relationship with Hop Wo for the duration of the terms of the leases it reviewed. Defs. Mem. at 6. The Court disagrees. The Tung Firm's representation of Defendants concluded when it completed the sole purpose for which it was hired — review of the leases.

Both lease reviews were fully performed by the time Long King retained the Tung Firm in September 2022. Tung Decl., Dkt. 53 ¶¶ 8–10; Pl. Opp. at 2. Defendants never contacted or retained the Tung Firm to provide additional services with respect to either lease, nor did the parties sign a retainer establishing a future obligation of representation. Tung Decl. ¶¶ 8–9; Liu Decl., Dkt. 53 ¶ 6; Defs. Mem. at 2. Hop Wo's individual payments of $800 per lease review are consistent with the Tung Firm's standard fee for a simple lease review, suggesting that the Tung Firm and Defendants intended the lease reviews to be one-time arrangements rather than the beginning of a years-long attorney-client relationship. Tung Decl. ¶ 8; *see Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc*, 687 F. Supp. 2d 381, 389–90 (S.D.N.Y. 2010) ("[U]nless the lawyer is on a general retainer, covering the entire period involved, the relationship does not

3

extend to business or affairs of the party as to which the lawyer was not initially contracted.") (quoting 48 Am. Jur. 2d *Proof of Facts* § 18 (1987)).[2]

Defendants further contend that they considered the Tung Firm to be their attorney because Li has no familiarity with the law and Hop Wo does not have in-house counsel. Defs. Mem. at 6. They claim that this belief caused confusion when Li received the summons and Complaint, which contained the Tung Firm's information, and called Mr. Tung, who advised Li to engage in settlement discussions after the Lunar New Year.[3] *Id*. at 6–7. While "subjective belief can be considered," it "is not sufficient to establish an attorney-client relationship." *Kubin v. Miller*, 801 F. Supp. 1101, 1115 (S.D.N.Y. 1992) (citation omitted). Absent a retainer specifying the scope of representation or other solicitation of services, Defendants' "belief" that the Tung Firm was their attorney does not suffice to demonstrate the existence of an ongoing attorney-client relationship.

In short, because no attorney-client relationship existed at the time the purported conflict arose, the Tung Firm's representation of Long King and Hop Wo was not simultaneous.

### III. The Tung's Firm Successive Representation of the Parties Does Not Warrant Disqualification

In cases of successive representation, disqualification is warranted if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's

---

[2] *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381 (S.D.N.Y. 2010), on which Defendants rely to argue that the Tung Firm has a continuing attorney-client relationship arising out of the lease reviews, supports the opposite conclusion. In *Revise Clothing, Inc.,* the court rejected the notion that a narrowly drawn retainer for a specific, one-time arrangement obliged the firm to handle all future litigation for the client. *Id*. at 390. Here, Defendants similarly contracted for one-time services, without a prospective retainer. *See id*. at 389–90.

[3] Defendants contend that the Tung Firm's failure to clarify that they were representing the adverse party, in combination with Li's reliance on Mr. Tung's instructions to engage in settlement discussions after the Lunar New Year, led Defendants to delay in responding to the Complaint, and ultimately, caused them to incur legal costs associated with Plaintiff's motion for default judgment. Defs. Repl., Dkt. 55 at 4; Pl. Mot., Dkt. 22. There is no indication, however, that Defendants followed the alleged advice and attempted to engage in settlement discussions between the Lunar New Year and the time Plaintiff filed a motion for default judgment.

>prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have access to, relevant privileged information in the course of his prior representation of the [moving party].

*Hempstead*, 409 F.3d at 133 (citation omitted).

### A. Hop Wo Is a Former Client of the Tung Firm

As discussed *infra*, Hop Wo is a former client of the Tung Firm.

### B. There Is No Substantial Relationship Between the Matters

To demonstrate a "substantial relationship" between the current dispute and the prior representation, Defendants must show that the relationship between the matters is "patently clear" or so similar that the two matters are "essentially the same." *Network Apps, LLC v. AT&T Mobility LLC*, 598 F. Supp. 3d 118, 129 (S.D.N.Y. 2022) (citing *Gov't of India v. Cook Indus. Inc.*, 569 F.2d 737, 739–40 (2d Cir. 1978)) (finding a substantial relationship when prior representation of defendant resulted in plaintiff's attorney learning confidential information from defendant that became "the cornerstone" of plaintiff's claim).

Defendants argue that the matters are related because the shipments from China were stored in a warehouse for which the Tung Firm performed a lease review. Defs. Mem. at 3. Defendants do not suggest, however, that the terms of the warehouse lease are relevant to the current dispute. *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) (citation omitted).

Such an attenuated relationship falls far short of the sort of "patently clear" relationship between matters necessary to satisfy this prong. *Gov't of India*, 569 F.2d at 740; *see also Cmty. Programs of Westchester Jewish Cmty. Servs. v. City of Mt. Vernon*, No. 06-CV-3332, 2007 WL 1484037, at *1 (S.D.N.Y. May 21, 2007) (finding no substantial relationship where "defendants proffer[ed] no evidence that the material facts in the prior litigation are the same as . . . in the

present case"). Because the two matters are factually distinct, the Tung Firm does not face a conflict of interest. *See* N.Y. Rules of Pro. Conduct r. 1.9 cmt. 2 (2021) ("[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type, even though the subsequent representation involves a position adverse to the prior client.").

### C. The Tung Firm Does Not Have Privileged, Relevant Information

Even absent a substantial relationship, disqualification may be warranted if the moving party can show that the former attorney received confidential information that may be used against it. *See Network Apps, LLC,* 598 F. Supp. 3d at 131 (noting that "[t]he failure to prove a substantial relationship . . . destroys any presumption of relevant shared confidences" unless the attorneys "actually received confidential information") (cleaned up). This standard derives from the ethical requirement that an attorney must protect client confidences. *See* N.Y. Rules of Pro. Conduct r. 1.6(a) (2021) ("A lawyer shall not knowingly reveal confidential information . . . or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person.").

Disqualification is appropriate if the attorney "could have received information which his former client might reasonably have assumed the attorney would withhold from his present client" and that information gave the attorney an "unfair advantage" in subsequent litigation. *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977); *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 366 F. Supp. 3d 567, 573 (S.D.N.Y. 2019) (denying motion to disqualify where moving party failed to identify any unfair advantage obtained by the opposing party).

Defendants have not demonstrated that the Tung Firm obtained information that they "might reasonably have assumed" it would withhold from Long King. *Allegaert,* 565 F.2d at 250. Rather, they merely surmise that information regarding Defendants' financial health necessary to support their ability to enter into the leases was "most likely" shared with the Tung Firm and that the May 2022 lease review would have "provide[d] insight into the financial prosperity of Hop Wo, but also Mr. Li, individually." Defs. Mem. at 11, 11 n.6.

Defendants, who presumably know whether they shared their own confidential information with the Tung Firm, offer only speculation that the Tung Firm has such information. Defendants also offer only vague allegations that Plaintiff relied on that purportedly confidential information in deciding to sue Defendants; Defendants' speculation is disputed by sworn statements submitted by attorneys of the Tung Firm.[4] *Id.* at 11 n.6; *see also* Liu Decl. According to the Tung Declaration, when the firm is retained to review leases, it does not ask for its client's financial information or any information that is unrelated to the lease review. Tung Decl. ¶ 9. Attorney Yaohua Liu, who performed the May 2022 lease review that Defendants claim provided insights into their "financial prosperity," states that he did not learn any financial or corporate information about Defendants outside of what the lease terms might have suggested "on their face." Defs. Mem. at 11; Liu Decl. ¶ 8. According to Liu, the lease review focused solely on the written terms of the lease. Liu Decl. ¶ 7.

In sum, Defendants' unsworn speculation that confidential financial information was shared and unsupported belief that they were concurrently being represented by the Tung Firm

---

[4]  Defendants further argue that the Tung Firm's failure to advise clients of a potential conflict is evidence of a pattern because of the Tung Firm's conduct in other cases. Defs. Mem.at 12. The Tung Firm's conduct in other, unrelated cases is wholly irrelevant to the facts of this case.

7

are not sufficient to carry their "heavy burden" of establishing a conflict of interest. *John Wiley & Sons Inc.,* 126 F. Supp. 3d at 419.

## CONCLUSION

For the foregoing reasons, Defendants' motion to disqualify the Tung Firm as Plaintiff's counsel is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 50.

Not later than **November 17, 2023**, the parties must submit a joint letter with proposed next steps, including a statement as to whether the parties request a referral to the Court-annexed mediation program or to the assigned magistrate judge for a settlement conference and a revised proposed case management plan, the contents of which can be found at Dkt. 5.

**SO ORDERED.**

Date: November 3, 2023  
New York, NY

_____  
**VALERIE CAPRONI**  
**United States District Judge**